Cite as 2019 Ark. App. 488

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV-18-14

| | |
|---|---|
| BOSTON MOUNTAIN REGIONAL SOLID WASTE MANAGEMENT DISTRICT<br><br>      APPELLANT/CROSS-APPELLEE<br><br>V.<br><br>BENTON COUNTY REGIONAL SOLID WASTE MANAGEMENT DISTRICT<br>      APPELLEE/CROSS-APPELLANT | Opinion Delivered: October 30, 2019<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT<br>[NO. 04CV-16-629]<br><br>HONORABLE XOLLIE DUNCAN, JUDGE<br><br>REVERSED ON DIRECT APPEAL; CROSS-APPEAL DISMISSED |

## RITA W. GRUBER, Chief Judge

This appeal arises from a dispute between two regional solid-waste management districts over statutory fees related to the movement or disposal of solid waste within and between districts. Instead of the equal division of fees called for in the code, the Benton County Circuit Court found that the statutory fee division provided for an "unjust enrichment" to the appellant Boston Mountain Regional Solid Waste Management District and that the entire fee should be paid over to the appellee Benton County Regional Solid Waste Management District. The Boston Mountain District appeals, arguing that the statutory scheme should be enforced as written because the statute is presumed constitutional. The Benton County District cross-appeals, arguing that the circuit court erred in not declaring the statute unconstitutional. We reverse on direct appeal and dismiss the cross-appeal.

I. *Background Facts*

A brief history of the legislation and this lawsuit is helpful. In March 1991, the Arkansas legislature passed Act 752 of 1991 as part of an overhaul of the state's solid-waste management system and recycling programs. The Act renamed regional solid-waste planning districts and solid-waste service areas as regional solid-waste management districts to be governed by regional solid-waste management boards. Act 752 also greatly expanded the powers and duties of the regional solid-waste management boards, which are the entities responsible for providing solid-waste management systems for their districts. The Act gave the boards authority to assess service fees for solid-waste collection services. *See* Ark. Code Ann. § 8-6-714(b) (Repl. 2018). The Act was silent as to any limits on the amount of the fees and whether they could be assessed on districts that disposed of solid waste from an adjoining district. Section 8-6-714 was substantially rewritten by Act 209 of 2011. Pertinent to this appeal, the boards were given authority to "fix, charge, and collect rents, fees, and charges of no more than two dollars ($2.00) per ton of solid waste related to the movement or disposal of solid waste within the district[.]" *See* Ark. Code Ann. § 8-6-714(a)(1)(A). As amended, section 8-6-714(c)(3) further specified certain conditions and circumstances under which fees may be assessed:

(A) Districts shall determine by interlocal agreement how the districts shall:

(i) Assess and administer the fee; and

(ii) Divide the fees.

(B) If districts cannot reach an interlocal agreement regarding the division of the fees, then the fees shall be divided equally between the districts.

Ark. Code Ann. § 8-6-714(c)(3)(A).

The parties once had an interlocal agreement dated May 26, 2011, that addressed the distribution of the waste-assessment fees for waste originating in the Benton County District and brought into the Boston Mountain District. The fees are paid to the districts by the company hauling the waste load to the landfill through a contract with a municipality or county government. Article 2 of the agreement provided that both districts at present had a waste-assessment fee of $1.50 per ton on all solid waste generated in their respective district, brought into their district from outside their district, or generated in their district and transported outside their district or the state. Article 3 provided that the fee would remain at $1.50 per ton unless both agreed to an increase. In Article 10, the districts agreed to leave in place any contract for waste-assessment fees existing at the time of the agreement and that the fee would be paid entirely to the generating district. The essence of the agreement is that the district generating the waste receives the entire fee. The agreement was to expire on May 1, 2016.

A private company, Waste Management, operates the Eco-Vista Landfill in Tontitown, Arkansas, within the Boston Mountain District. The landfill is the destination for solid waste generated within the Benton County District. There are no landfills in the Benton County District.

On April 28, 2016, the Benton County District filed its complaint for declaratory and injunctive relief. The complaint alleged that the Boston Mountain District refused to renew the 2011 agreement and, instead, proposed a new agreement that would pay the Boston Mountain District $1 per ton for waste generated in Benton County and disposed

3

of in the Boston Mountain District, with the remainder of the proposed $2 per ton fee to be paid to the Benton County District. The complaint further alleged that the Benton County District had not agreed to the new fee and that the Boston Mountain District did not provide any services for which the Benton County District will be required to pay the fees. According to the Benton County District, this amounted to an unjust enrichment of the Boston Mountain District. The Benton County District sought to enjoin the Boston Mountain District from the collection of the fees and that such fees be held in escrow during the pendency of the action. The Benton County District also sought a declaration (1) of the parties' rights and obligations; (2) that the Boston Mountain District is not entitled to any fees for services provided solely by the Benton County District; and (3) that Arkansas Code Annotated section 8-6-714 is unconstitutional.

After its motion to dismiss was denied, the Boston Mountain District answered the complaint. The Boston Mountain District admitted the historical facts surrounding the 2011 agreement but denied the material allegations of the complaint and asserted various affirmative defenses.

The Benton County District filed a motion seeking to have Waste Management pay the disputed fees into escrow pending resolution of the case. The circuit court ultimately entered an order, as amended, providing that one-half of the disputed fees would be held in escrow while the other half would be paid to the Benton County District.

The case was tried to the bench on April 25, 2017. The circuit court took the matter under advisement and entered an order on September 11, 2017, finding that the equal division of the fee was an unjust enrichment and directing the entire fee be retained by the

4

Benton County District. The court found that (1) the fees collected by the Benton County District were collected to provide required services for the citizens of Benton County; (2) if the fees were reduced so as to allow the Boston Mountain District a portion of the fees, the services provided by the Benton County District would be reduced and employees would be terminated; (3) the reduction in services and elimination of employees would not otherwise be provided to Benton County citizens; (4) the collection of additional fees by the Boston Mountain District is not necessary to increase services to the landfill operated by Waste Management; (5) any additional fees collected by the Boston Mountain District would be used to fund its operating expenses and provide raises for staff or to increase employees and services; and (6) allowing the Boston Mountain District to collect any fees from waste generated in the Benton County District amounts to an unjust enrichment. The court did not address the Benton County District's request to find Ark. Code Ann. § 8-6-714 unconstitutional.

The Boston Mountain District filed a timely notice of appeal on October 9. The circuit court entered an amended order on October 10, adding a specific finding that the Ark. Code Ann. § 8-6-714 is not unconstitutional. The Benton County District filed a notice of cross-appeal on October 11.

## II. *Standard of Review*

We review issues of statutory interpretation de novo. *Williform v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 314, 551 S.W.3d 401. The basic rule of statutory construction is to give effect to the intent of the General Assembly. *Id.* In determining the meaning of a statute, our first rule is to construe it just as it reads, giving the words their ordinary and

5

usually accepted meaning in common language. *Id*. This court construes the statute so that no word is left void, superfluous, or insignificant, and meaning and effect are given to every word in the statute if possible. *Id*. When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to resort to rules of statutory construction. *Id*.

### III. *Cross-Appeal*

We start with the Benton County District's cross-appeal in which it argues that the circuit court erred in not finding section 8-6-714 unconstitutional. However, we hold that the Benton County District failed to file an effective notice of appeal from the amended order finding the statute constitutional. Whether an appellant has filed an effective notice of appeal is always an issue before the appellate court, and absent an effective notice of appeal, this court lacks jurisdiction to consider the appeal and must dismiss it. *Lindsey v. Green*, 2010 Ark. 118, 369 S.W.3d 1.

In *Lindsey*, Green filed a notice of cross-appeal, appealing from the final order in the case entered on January 20, 2009. However, on appeal, Green argued that he was appealing the trial court's order denying his motion for costs, which was not included in the final order but was part of a separate order entered on January 23, 2009. *Id*. at 12–13, 369 S.W.3d at 8. Relying on Rule 3(e) of the Arkansas Rules of Appellate Procedure–Civil, the supreme court held that Green had failed to file an effective notice of cross-appeal and dismissed the cross-appeal. *Id*. at 13, 369 S.W.3d at 8.

The facts in *Lindsey* are nearly identical to those in the present case—in both cases, the cross-appellants designated the final order as the one being appealed despite the fact that

6

the issue they wanted to argue was not addressed until a later separate order not named in their notices of cross-appeal. Therefore, we dismiss the Benton County District's cross-appeal.

## IV. *Direct Appeal*

On direct appeal, the Boston Mountain District argues that the statute should be enforced as written because there is no basis for it to be ruled unconstitutional and that unjust enrichment does not apply in this case. Benton County District argues that the statute is an illegal exaction and the circuit court correctly found that there was an unjust enrichment.

All statutes are presumed constitutional, and we resolve all doubts in favor of constitutionality. *Brennan v. White Cty.*, 2019 Ark. App. 146, 573 S.W.3d 577. The party challenging a statute's constitutionality has the burden of proving that the act is unconstitutional. *See id*. It is a well-established principle that courts are bound to apply an unambiguous statute as it is written. *Kan. City S. Ry. Co. v. Pledger*, 301 Ark. 564, 785 S.W.2d 462 (1990); *Chandler v. Perry-Casa Pub. Sch. Dist. No. 2*, 286 Ark. 170, 690 S.W.2d 349 (1985).

Further, we do not believe that unjust enrichment has any application to this case. Unjust enrichment is an equitable doctrine. *See Campbell v. Asbury Auto., Inc.*, 2011 Ark. 157, 381 S.W.3d 21. It is the principle that one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of

7

law or opposition to public policy, either directly or indirectly. *Id*. The existence of a contractual relationship between the parties that addresses the subject in dispute generally precludes recovery on a theory of unjust enrichment. *Id*. "The reason for the rule that someone with an express contract is not allowed to proceed on an unjust-enrichment theory, is that such a person has no need of such a proceeding, and, moreover, that such a person should not be allowed by means of such a proceeding to recover anything more or different from what the contract provides for." *Id*. at 23, 381 S.W.3d at 37 (quoting *United States v. Applied Pharm. Consultants, Inc.*, 182 F.3d 603, 609 (8th Cir. 1999)); *see also Friends of Children, Inc. v. Marcus*, 46 Ark. App. 57, 61–62, 876 S.W.2d 603, 605–06 (1994); Restatement (Third) of Restitution & Unjust Enrichment § 2(2) (Am. Law Inst. 2011). Here, the parties do not currently have a written contract—an interlocal agreement that addresses the division of fees; however, section 8-6-714(c)(3) does provide a default rule for such a situation—that the districts equally divide the fees. The fact that it is a statute instead of a written contract that supplies the disputed term does not change the result. Otherwise, the Benton County District would receive more than it is entitled to under the statute. *Campbell*, *supra*.

We hold that the circuit court erred in applying the doctrine of unjust enrichment in the circumstances of this case. As discussed above, there was no basis for the application of unjust enrichment. Instead, the court should have applied section 8-6-714 as written. That would have forced the two districts to either negotiate an interlocal agreement acceptable to both regarding the division of the fees or, in the absence of such an agreement, equally divide the fees.

Also, the Benton County District argues that the application of the statute is unfair to it. However, that is no reason for the circuit court not to apply the statute in this case. *Worth v. Civil Serv. Comm'n of El Dorado*, 294 Ark. 643, 746 S.W.2d 364 (1988); *see also C.I.R. v. Asphalt Prods. Co., Inc.*, 482 U.S. 117, 121 (1987) ("Judicial perception that a particular result would be unreasonable may enter into the construction of ambiguous provisions, but cannot justify disregard of what Congress has plainly and intentionally provided."). This is not to say that the Benton County District does not have options; however, those options are best addressed to the legislature, not the courts. *Sw. Bell Tel. Co. v. Roberts*, 246 Ark. 864, 440 S.W.2d 208 (1969).

Reversed on direct appeal; cross-appeal dismissed.

WHITEAKER and VAUGHT, JJ., agree.

*Harrington, Miller, Kieklak, Eichmann & Brown, P.A.*, by: *Thomas N. Kieklak*, for appellant/cross-appellee.

*Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, by: *Curtis E. Hogue* and *M. Scott Hall*, for appellee/cross-appellant.